UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| **Jennifer Brooke Bailey,** | Civil Action No. 2:23-cv-5575-RMG |
| **Plaintiff,** | **COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| **Sterling Infosystems, Inc.,** | |
| **Defendant.** | |

## COMPLAINT

1. This is an action brought by Plaintiff, Jennifer Brooke Bailey, for actual, statutory, and punitive damages, plus attorneys' fees and costs for Defendant's violations of the Fair Credit Reporting Act, 15 U.S.C. §§1681a-x, against Defendant after Defendant incorrectly reported to a potential employer for Plaintiff that Plaintiff had a criminal history when she did not. The potential employer delayed Plaintiff's start date because of this inaccuracy which caused great harm to the Plaintiff.

2. Plaintiff brings a claim against Defendant under 15 U.S.C. §1681e(b), for its failure to establish or to follow reasonable procedures to ensure the maximum possible accuracy in the preparation of the consumer reports and consumer files it published and maintains concerning the Plaintiff.

3. Plaintiff also brings a claim against Defendant for its violations of 15 U.S.C. §1681k(a), because it furnished consumer reports containing public-record information likely to have an adverse effect on a consumer's ability to obtain

1

employment and failed to provide at-the-time notification to the consumer that the adverse information was being reported and to whom it was being reported. Defendant also failed to maintain strict procedures designed to insure that whenever public record information which is likely to have an adverse effect on a consumer's ability to obtain employment is reported it is complete and up to date.

4. The FCRA exists to protect consumers' privacy and to impose upon those who trade in consumers' private information strict requirements to ensure that the information they report is as accurate as possible.

5. Before the enactment of the FCRA, inaccurate and misleading information was identified as "the most serious problem in the credit reporting industry." 115 Cong. Rec. 2411 (Jan. 31, 1969). With this problem in mind, Congress enacted the FCRA "to prevent consumers from being unjustly damaged because of inaccurate or arbitrary information in a credit report." S. Rep. No. 91-517 (1969).

6. To accomplish Congress' goals, the FCRA contains a variety of requirements to protect consumers, including §§ 1681e and 1681i, which are two of the cornerstone provisions of the FCRA.

7. One of the primary purposes of the FCRA is to assure "maximum possible accuracy" of consumer information to ensure the stability of our banking system:

> The banking system is dependent upon fair and accurate credit reporting. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence which is essential to the continued functioning of the banking system.

*See* 15 U.S.C. § 1681(a)(1).

8. The preservation of one's good name and reputation is also at the heart of the FCRA's purposes:

> [W]ith the trend toward computerization of billings and the establishment of all sorts of computerized data banks, the individual is in great danger of having his life and character reduced to impersonal "blips" and key-punch holes in a stolid and unthinking machine which can literally ruin his reputation without cause, and make him unemployable or uninsurable, as well as *deny him the opportunity to obtain a mortgage or buy a home. We are not nearly as much concerned over the possible mistaken turn-down of a consumer for a luxury item as we are over the possible destruction of his good name without his knowledge and without reason. * * * [A]s Shakespeare said, the loss of one's good name is beyond price and makes one poor indeed* (emphasis added).

*Bryant v. TRW, Inc.*, 689 F.2d 72, 79 (6th Cir. 1982) [quoting 116 Cong. Rec. 36570 (1970)].

9. Even when reports are accurate, the FCRA still demands notice of the reporting under Section 1681k(a)(1), which allows consumers to discuss potentially negative information with employers and provides an opportunity to soften the impact of that information on the employer's hiring decision.

10. Defendant inaccurately reported that Plaintiff had a criminal history. Plaintiff has no criminal record.

11. Defendant does not maintain any procedures by which it insures that the public-record information it reports to its customers is complete or up to date. Defendant therefore cannot rely on this option for complying with 15 U.S.C. §1681k(a).

12. Because of this lack of notice, by the time she learned of these inaccuracies, it was

too late for Plaintiff. The decision to delay Plaintiff's start date had been made before Plaintiff received the report from Defendant on which the employer based its decision.

## JURISDICTION AND VENUE

13. This Court has Jurisdiction under the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. §1681p, and 28 U.S.C. §1331 and §1332.

14. Venue is proper in the Charleston Division because the Plaintiff resides in Charleston County and the Defendant transacted business in this Division.

## PARTIES

15. The Plaintiff, Jennifer Brooke Bailey, is a resident and citizen of the State of South Carolina, Charleston County, and is over the age of twenty-one (21) years.

16. Plaintiff is a "consumer" as protected and governed by the FCRA.

17. Defendant Sterling Infosystems, Inc. (hereinafter Defendant or "Sterling") is a privately held corporation headquartered in New York and incorporated in Delaware. Defendant is registered to do business in South Carolina with the South Carolina Secretary of State. Defendant may be served with process through its registered agent for service of process, Paracorp Inc., 2 Office Park Court, #103, Columbia, South Carolina, 29223. Defendant was in all respects and at all times relevant herein, doing business in the State of South Carolina.

18. At all times pertinent to this Complaint, Defendant Sterling was a "consumer reporting agency," as defined in 15 U.S.C. §1681(f). Defendant is regularly

engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purposes of furnishing consumer reports, as defined in 15 U.S.C. §1681(d), to third parties.

19. At all times relevant to this Complaint, the background-screening reports that Defendant has prepared are generally "consumer reports" as defined by 15 U.S.C. §1681(d). Defendant disburses such consumer reports to third parties under contract for monetary compensation.

## FACTUAL ALLEGATIONS

20. On or around July 21, 2023, Plaintiff sought employment with Continental Tire the Americas, LLC ("Continental Tire").

21. On or about August 18, 2023, Plaintiff received a written offer for a position with Continental Tire as Sr. Paralegal, with a start date of September 5, 2023. Plaintiff accepted the offer and executed Continental Tire's Offer Summary. The offer was conditioned on Plaintiff passing the background check.

22. On August 18, 2023, Defendant took Plaintiff's personal identifying information provided to Continental Tire and created a background check report about her for Continental Tire. Defendant completed the report on or about August 18, 2023.

23. Plaintiff first learned a criminal record was reporting on her background check completed by Defendant when she received a call from the Continental Tire recruiter on August 28, 2023, asking her to explain the criminal charge that was showing on her background report from Defendant. Plaintiff was absolutely

shocked and embarrassed. Plaintiff was so stunned that her legs went numb and she immediately felt sick. During this conversation, Plaintiff informed the recruiter that it was a terrible mistake because she did not have any criminal convictions. The recruiter then responded by verifying that Plaintiff's date of birth matched the date of birth which had been added by Defendant to the criminal charge. Of course it matched, because Defendant had Plaintiff's date of birth at the time it compiled the background report.

24. Plaintiff did not receive, view, or learn of the contents of Defendant's background report on her prior to the report being provided to Continental Tire.

25. Defendant did not provide Plaintiff any notice that it was furnishing a consumer report with potentially damaging information to Continental Tire.

26. On August 28, 2023, Plaintiff sent an email to Defendant's Dispute Resolution department disputing the incorrect information reporting on her background check performed by Defendant. Specifically, Plaintiff disputed the reporting of a conviction for shoplifting in Greenville, South Carolina in December 2021, the reporting of a middle name of Lea, and the reporting of an 8 Fruitwood Ct., Simpsonville, South Carolina 29691 address as belonging to Plaintiff in December of 2021. In support of her dispute, Plaintiff provided Defendant her full name and her full address at the time of the alleged arrest. Plaintiff also informed Defendant that she had already spoken with the Court and verified that her date of birth, social security number, and middle name were not associated with the case listed by

Defendant. Finally, Plaintiff informed Defendant that she had never been arrested or convicted of a crime.

27. On August 29, 2023, at 9:21 a.m., Plaintiff received an email from Christina Minite of the Sterling Dispute Resolution Team stating once the dispute is resolved Defendant would deliver Plaintiff her dispute resolution notification, consumer report(s) and applicable summaries of rights to the email address provided by Plaintiff.

28. On August 29, 2023, at 9:23 a.m., Plaintiff forwarded Defendant's employee, Christina Minite, a copy of her driver's license confirming her complete identity.

29. On August 29, 2023, at 10:33 a.m., Plaintiff received an email from Christa, Defendant's Dispute Resolution Team Lead stating, "[o]ur records indicate that a dispute has already been initiated on your behalf under case number 28345279 and will be processed. Once the dispute has been resolved, you will be notified."

30. On August 30, 2023, at 10:35 a.m., Plaintiff emailed Dispute Resolution Team Lead Christa asking her to provide a copy of her Sterling background report.

31. On September 1, 2023, Christa responded to Plaintiff's request for a copy of her Sterling background report stating "[our] records indicate that the dispute is currently under investigation. Once the dispute has been resolved, you will be notified."

32. Immediately after receiving said email, Plaintiff responded again requesting a copy of the background report that was provided to Continental Tire.

7

33. As a result of Plaintiff's second request on September 1, 2023, Christa forwarded Plaintiff's request to Defendant's Client Support and Candidate Support asking them to send the Plaintiff a copy of the report.

34. On the same day, Plaintiff received an email from Sonia Fonseca, Defendant's Client & Candidate Care Representative, stating they "have placed the request for the copy of your background check report to be emailed to you. You will be receiving it within 24 to 72 hours."

35. Five days later, on September 6, 2023, the day *after* Plaintiff was supposed to begin her Sr. Paralegal position with Continental Tire, Defendant's Client & Candidate Care Representative, Sonia Fonesca, emailed Plaintiff stating "[t]he copy of the report cannot be sent to you now as the order is till *(sic)* pending and is estimated to be completed by 09/07/2023."

36. On September 8, 2023, having not heard or received anything from Defendant, Plaintiff emailed Sonia Fonesca again requesting an update on her background check and stating, "[t]his has delayed my job with Continental."

37. Plaintiff also contacted Defendant's Dispute Resolution Department by way of telephone. During this call, Plaintiff again specifically informed Defendant that the criminal conviction was not hers and she needed her background report corrected immediately as her start date had been delayed and she was at risk of losing the job. Defendant responded to Plaintiff stating that they couldn't correct the background report because they couldn't prove the criminal charge didn't belong to Plaintiff.

8

38. As a result of the erroneous information reporting on Defendant's background check of Plaintiff, Plaintiff's start date with Continental Tire was delayed from September 5, 2023, until September 24, 2023, more than two weeks after her original start, and Plaintiff feared she might never get to actually start her job.

39. While Plaintiff was waiting on her job to start with Continental Tire, she was forced to take a temporary job which paid significantly less just so she could pay her bills.

40. Additionally, due to Defendant's delay in correcting the inaccurate background report, Plaintiff called the Clerk of Court for Fairview/Austin Summary Court and verified that the middle name of the person arrested and convicted of shoplifting did not match Plaintiff's middle name. Plaintiff also verified that there was no date of birth listed publicly for the charge.

41. To further prove her innocence of this criminal conviction and keep the job she had been offered by Continental Tire, Plaintiff also located a background check from January 2023, which had been completed by a different company. The January 2023 report did not contain the criminal conviction. Plaintiff provided the January 2023 report to Continental Tire.

42. To further the embarrassment caused by Defendant, Plaintiff received a call from Continental Tire stating that Defendant could not locate her high school diploma and they needed proof from Plaintiff that she had completed high school. Plaintiff promptly provided Continental Tire a copy of her high school diploma.

43. Section 1681e imposes a simple, and unequivocal requirement that Defendant must

maintain reasonable procedures to ensure maximum possible accuracy of the information in its report regarding Plaintiff.

44. Defendant failed to maintain and follow reasonable procedures to assure maximum possible accuracy of the criminal-record information in its consumer reports.

45. Defendant failed to maintain and follow reasonable procedures regarding the accuracy of information when preparing and furnishing to the employer a consumer report regarding Plaintiff.

46. Defendant failed to consider all the relevant information in its possession when preparing the report regarding Plaintiff, as it should have been clear the information returned about Plaintiff did not match the personal information Plaintiff provided.

47. Defendant failed to utilize reasonable procedures to ensure maximum possible accuracy of the information and proceeded to provide an inaccurate report which negatively affected Plaintiff.

## COUNT ONE
Violations of 15 U.S.C. § 1681e(b)

48. The Plaintiff adopts, to the extent same are consistent with the allegations contained herein, the averments and allegations of paragraphs 20 through 47 hereinbefore as if fully set forth herein.

49. Defendant negligently and/or willfully violated 15 U.S.C. § 1681e(b) by failing to establish and/or to follow reasonable procedures to assure maximum possible accuracy in the preparation of the consumer report and consumer files it published and maintains concerning Plaintiff. Defendant's reports were patently false in such

a way and to such an extent that they can be expected to adversely affect hiring decisions. Defendant should have known Plaintiff did not have criminal charges as the information related to the criminal conviction did not match Plaintiff's information. Specifically, the middle name, date of birth, and address of the individual with the criminal charge differed from the Plaintiff.

50. The conduct, action, and inaction of Defendant was willful, rendering it liable for Plaintiff's actual damages, as well as punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff under 15 U.S.C. § 1681e(b).

51. Defendant knew or should have known of its legal obligations under the FCRA. These obligations are well established in the plain language of the statute and published circuit court authority. Defendant obtained or otherwise had available substantial written materials that apprised Defendant of its duties under the FCRA.

52. Moreover, Defendant has been sued multiple times, including by the Bureau of Consumer Financial Protection, for inaccuracies relating to its background-check reports. *See e.g. Bureau of Consumer Financial Protection v. Sterling Infosystems, Inc.,* U.S. Dist. Ct. Case #1:19-cv-10824 (S.D. NY, November 22, 2019). Defendant has therefore been on notice of the problems inherent in its system yet has done nothing to correct them.

53. As a result of Defendant's violations of the FCRA, the Plaintiff suffered, continues

to suffer, and will suffer future damages, including, but not limited to, lost wages, severe anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, and embarrassment and mental anguish. Additionally, Plaintiff felt, and continues to feel, embarrassment with her now current employer, Continental Tire, over the damage to her name, particularly being wrongfully labeled as a "criminal" and has had to seek counseling for same. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

54. In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

55. Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681n and/or 15 U.S.C. §1681o.

## COUNT TWO
Violations of 15 U.S.C. § 1681k(a)

56. The Plaintiff adopts, to the extent same are consistent with the allegations contained herein, the averments and allegations of paragraphs 20 through 55 hereinbefore as if fully set forth herein.

57. The FCRA provides that consumer reporting agencies that furnish a consumer report for employment purposes which includes items of information on consumers that are matters of public record and which are likely to have an adverse effect upon a consumer's ability to obtain employment shall either: (1) notify the consumer, at the time that such information is reported, of the fact that public-record information

is being reported, or (2) maintain "strict procedures designed to insure" that such information is "complete and up to date." 15 U.S.C. § 1681k(a).

58. The consumer reports regarding Plaintiff were furnished by Defendant for an employment purpose and contained one or more public records of the type that may adversely affect a consumer's ability to obtain employment.

59. In creating consumer reports for employment purposes, Defendant makes no effort to ensure that public-record information it reports is "complete and up-to-date" at the time it furnishes such records to employers like Continental Tire.

60. Defendant did not itself or by its own court researchers or vendors attempt to verify the completeness or current status of the public records pursuant to 15 U.S.C. § 1681k(a)(2), within 30 days before it furnished and sold these records in its reports.

61. Defendant uniformly fails to comply with the rigors of FCRA § 1681k(a)(2) and therefore must necessarily rely on the contemporaneous-notice requirement of §1681k(a)(1) to comply with the FCRA.

62. When Defendant provided the report about Plaintiff with negative information to Continental Tire, Defendant did not send Plaintiff a notice pursuant to 15 U.S.C. § 1681k(a)(1).

63. Defendant's failure to timely provide the required FCRA notice to the Plaintiff violated 15 U.S.C. § 1681k(a)(1).

64. Defendant's failure to maintain strict procedures designed to ensure the public record information contained within its consumer reports was complete and up to

       date violated 15 U.S.C. § 1681k(a)(2).

65. Defendants violations of 15 U.S.C. § 1681k(a) where neligent and/or willful and thus entitle Plaintiff to actual, statutory and punitive damages.

66. The conduct, action, and inaction of Defendant was willful, rendering it liable for Plaintiff's actual damages, as well as punitive damages in an amount to be determined by the Court pursuant to 15 U.S.C. § 1681n. Defendant acted in deliberate or reckless disregard of its obligations and the rights of Plaintiff under 15 U.S.C. § 1681k(a).

67. As a result of Defendant's violations of the FCRA, the Plaintiff suffered, continues to suffer, and will suffer future damages, including, but not limited to, lost wages, severe anxiety, worry, fear, loss of sleep, headaches, loss of enjoyment of life, physical pain and sickness, frustration, humiliation, and embarrassment and mental anguish. Additionally, Plaintiff felt, and continues to feel, embarrassment with her now current employer, Continental Tire, over the damage to her name, particularly being wrongfully labeled as a "criminal" and has had to seek counseling for same. Plaintiff is entitled to actual damages in an amount to be determined by the jury.

68. In addition, the Plaintiff has incurred litigation expenses and attorneys' fees which, but for the acts and omissions of Defendant alleged herein, would not have been necessary.

69. Plaintiff is entitled to her attorneys' fees, pursuant to 15 U.S.C. §1681n and/or 15 U.S.C. §1681o.

## AMOUNT OF DAMAGES DEMANDED

WHEREFORE, PREMISES CONSIDERED, Plaintiff demands a judgment against the Defendants for the following:

A.  Actual, Statutory and Punitive damages for violations of 15 U.S.C. §§ 1681e(b) and 1681k(a), pursuant to 15 U.S.C. § 1681;

B.  That the Court award costs and reasonable attorneys' fees, pursuant to 15 U.S.C. §§ 1681n and 1681o; and

C.  That the Court grant such other and further relief as may be just and proper, including but not limited to any equitable relief, that may be permitted.

/s/ *Penny Hays Cauley*
Penny Hays Cauley, Fed. ID #10323
**HAYS CAULEY, P.C.**
1303 W. Evans Street
Florence, SC 29501
(843) 665-1717
(843) 665-1718 Facsimile
phc917@hayscauley.com

**PLAINTIFF DEMANDS A TRIAL BY STRUCK JURY ON ALL COUNTS**

/s/ *Penny Hays Cauley*
Penny Hays Cauley

**DEFENDANT TO BE SERVED VIA CERTIFIED MAIL:**
Sterling Infosystems, Inc.
c/o Paracorp Inc., Registered Agent
2 Office Park Court, #103
Columbia, SC 29223.